**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 17-295 |
| | ) | Judge Nora Barry Fischer |
| ANDRZEJ KAZIMIERZ ZIELKE, | ) | |

**MEMORANDUM ORDER**

I.      INTRODUCTION

In this case, a federal grand jury returned a 121-count Superseding Indictment against Defendant Andrzej Kazimierz Zielke, a former medical doctor licensed in the Commonwealth of Pennsylvania, who previously operated Medical Frontiers, LLC, a pain management practice, with three locations in the Western District of Pennsylvania. (Docket No. 27 at ¶ 1).   Specifically, Defendant is charged with 112 counts of unlawful dispensing and distributing schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); one count of conspiracy to unlawfully distribute schedule II controlled substances, in violation of 21 U.S.C. § 846; four counts of health care fraud, in violation of 18 U.S.C. § 1347; and four counts of money laundering, in violation of 18 U.S.C. § 1957. (Docket No. 27).   The Court previously denied a motion to dismiss the Superseding Indictment and this matter is currently set for jury selection and trial to commence on July 12, 2021.

Presently before the Court are three motions in limine filed by Defendant and the Government's responses in opposition. (Docket Nos. 90-92; 94; 96; 99).   Neither party sought leave to file replies and the Court considers the motions to be fully briefed and ripe for disposition. After careful consideration of the parties' arguments, and for the following reasons, Defendant's

motions in limine seeking to exclude evidence [90], [91] are denied and his motion in limine requesting a cautionary instruction [92] is granted, in part, and denied, in part.

## II.   LEGAL STANDARDS

Generally, evidence is relevant and admissible if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; 402.   Evidence of a criminal defendant's conduct which is not charged in the indictment, including crimes, wrongs or other acts, may be admissible if: (1) the evidence is intrinsic to the charged offense; or, (2) the evidence is extrinsic to the charged offense but is offered for a proper purpose under Rule 404(b).   *See United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 363, 178 L. Ed. 2d 234 (2010); *United States v. Williams*, 647 F. App'x. 144, 147 (3d Cir. 2016) (same).   In the Third Circuit, uncharged acts are considered intrinsic to the charged offense if such acts "directly prove" the charged offense, or are "performed contemporaneously with the charged crime" and "facilitate the commission of the charged crime." *Id.* at 248-49.   This type of evidence is admissible without the need for the government to provide notice to the defense prior to trial or for the Court to provide limiting instructions to the jurors during trial.   *Id.*   Uncharged acts which do not come within this definition of intrinsic evidence constitute extrinsic evidence and must meet the requirements of Rule 404(b) prior to being admitted at trial.   Rule 404(b) bars "the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character." *Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

Rule 404(b) provides, in pertinent part, that:

(b) Crimes, Wrongs, or Other Acts.

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted Uses … This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

FED. R. EVID. 404(b).   As the Court of Appeals articulated:

> [b]ecause Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts evidence has "the burden of demonstrating [the evidence's] applicability." [*United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014)]. Admissibility under Rule 404(b) requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction. *See Huddleston v. United States*, 485 U.S. 681, 691, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); *Caldwell*, 760 F.3d at 277–78.

*United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017).

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.   The Court of Appeals has observed:

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone.

3

*Repak*, 852 F.3d at 248 (quoting *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) (further quotation omitted).   Thus, a district court need only keep out evidence "if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value." *Id*. (quoting *Cross*, 308 F.3d at 323).

III.   DISCUSSION

Defendant has filed three separate motions in limine, all of which are opposed by the Government, in whole or part.   (Docket Nos. 90-92; 94; 96; 99).   The Court will address its rulings as to each motion, in turn, starting with Defendant's Motion in Limine Relating to Uncharged Conduct and Patient Deaths.

      a.   *Motion in Limine Relating to Uncharged Conduct and Patient Deaths (Docket No. 90)*

Defendant first moves to exclude evidence of "(a) prescriptions other than those identified in the [Superseding] Indictment as having been issued outside the usual course of professional practice and for no legitimate purpose; (b) the alleged improper storage or disposal of medical waste at [Defendant's] home; and, (c) patients deaths."   (Docket No. 90).   The Government counters that the challenged evidence is relevant to the charges in the Superseding Indictment, admissible under Rules 401 and 402 and not unduly prejudicial to the defense. (Docket No. 99). The Government also agrees that a limiting instruction should be provided as to any evidence of patient deaths.   (*Id*.).   Having considered the parties' arguments, the Court agrees with the Government that Defendant's motion should be denied and that a limiting instruction should be given as to the patient deaths.

With respect to the defense motion to exclude the prescriptions other than those specifically identified in Counts 1-112 in the Superseding Indictment, the Government proffers

that it intends to introduce statistical analyses of Defendant's overall prescribing habits during the relevant time periods of the conspiracy charge at Count 113, through witness testimony and Rule 1006 summary exhibits. (Docket No. 99). To that end, Defendant is charged with engaging in a conspiracy with individuals "known and unknown" to the grand jury to distribute quantities of "oxycodone, hydrocodone, morphine sulfate, oxymorphone and methadone" from in and around May 2014 through in and around October 2017.  (Docket No. 27 at 27).  As this Court held recently,

> the law is well settled in the Third Circuit that when an indictment charges a defendant with a conspiracy involving named individuals as well as others "known and unknown to the grand jury," the proof at trial of a conspiracy with an unnamed individual does not constitute an impermissible variance from the indictment. *See e.g., United States v. Staten*, 557 F. App'x 119, 122 (3d Cir. 2014) ("Although the government proved that Staten conspired with Jamelle Brooks, who was not a named defendant, the Superseding Indictment alleged that Staten conspired with "persons both known and unknown to the grand jury." [...] The government's proof at trial of one of those persons is thus consistent with the charge and not a departure from it."). Rather, such evidence of a defendant conspiring with an unknown individual constitutes intrinsic evidence directly proving the conspiracy offense. *See Green*, 617 F.3d at 249. In addition, evidence of a defendant's drug sales or communications regarding same during the timeframe of a charged conspiracy are generally deemed intrinsic to the conspiracy charge. *See e.g., United States v. Maynard*, 586 F. App'x. 56, 59 (3d Cir. 2015) (evidence of drug sales constitute strong evidence of knowing participation in the conspiracy); *United States v. Gardenhire*, Crim. No. 15-87, 2017 WL 1355151, at *3 (W.D. Pa. Apr. 13, 2017) (holding that the defendant's prior conviction of possession with intent to deliver "within the time frame of the charged conspiracy to distribute and possess with intent to distribute 1 kilogram of heroin and directly proves the charged offense at Count 1").

*United States v. Somerville*, Crim. No. 17-222, 2020 WL 336587, at *2 (W.D. Pa. Jan. 21, 2020)

(holding that text messages during the period of the conspiracy charged in the indictment were

admissible).   Hence, the proffered evidence is intrinsic to the conspiracy charge, such that the non-binding decisions relied upon by the defense are distinguishable. *See id.*   In addition, while Defendant claims that the introduction of evidence beyond the 112 prescriptions charged in the substantive counts of the Superseding Indictment is unfair and prejudicial, this Court has "'no discretion to exclude" the evidence proffered by the Government "because it is proof of the ultimate issue in the case.'"" *United States v. Swan*, 707 F. App'x 99, 106 (3d Cir. 2017) (quoting *United States v. Hoffecker*, 530 F.3d 137, 189 (3d Cir. 2008)) (further quotation omitted).

Defendant next seeks to exclude evidence of "the alleged improper storage or disposal of medical waste at [Defendant's] home" because it is irrelevant, beyond the scope of the Superseding Indictment and unduly prejudicial.   (Docket No. 90).   In response, the Government points out that the grand jury set forth specific allegations regarding his alleged improper disposal of medical waste in the Superseding Indictment, that the evidence is relevant to issues in the case and is not unduly prejudicial to the defense.   (Docket No. 99).   The Court once again agrees with the Government.

Initially, the Government is correct that the grand jury specifically charged that Defendant "did not adhere to the basic standards and procedures of operating a medical practice, such as the use of gloves, use of up-to-date testing kids and the disposal of used needles, Sharps and medical waste."   (Docket No. 27 at ¶ 6 (emphasis added)).   Hence, the proffered evidence is intrinsic and directly relevant to the charges lodged against Defendant by the grand jury. *See Green*, 617 F.3d at 249.

Additionally, the challenged evidence is also relevant to the essential elements of the crimes charged, which require the Government to prove beyond a reasonable doubt that the drug

distribution was conducted outside the usual course of professional practice and for no legitimate

medical purpose.   In this regard, the parties have agreed to the following joint jury instructions

regarding the essential elements:

> In Counts 1 – 112, [Defendant] is accused of knowingly, intentionally, and unlawfully dispensing and distributing, and causing to be dispensed and distributed, Schedule II controlled substances (e.g., oxycodone, hydrocodone, morphine sulfate, oxymorphone and methadone) (a) outside of the usual course of professional practice and (b) for no legitimate purpose. To prove these Counts the government must prove the following four (4) elements beyond a reasonable doubt:
>
> First, that [Defendant] dispensed or distributed the controlled substances or caused them to be dispensed or distributed.
>
> Second, that [Defendant] dispensed or distributed the controlled substances knowingly or intentionally.
>
> Third, that the controlled substance listed in each count is, in fact, the Schedule II controlled substance listed in that count.
>
> Fourth, that [Defendant] dispensed or distributed the controlled substance (a) outside the usual course of professional practice and (b) for no legitimate medical purpose.

(Docket No. 102); *see e.g, United States v. Polan*, 970 F.2d 1280, 1282 (3d Cir. 1992) ("the

offense of illegal drug distribution by a physician contains three essential elements: the physician

must (1) knowingly or intentionally (2) distribute (3) a controlled substance. The offense also

includes an exception for drug distribution by a physician in the usual course of professional

practice"); 21 C.F.R. § 1306.04 ("A prescription for a controlled substance[,] to be effective[,]

must be issued for a legitimate medical purpose by an individual practitioner acting in the usual

course of his professional practice.").

In this Court's estimation, evidence that a physician disposed of medical waste in his own backyard is certainly relevant to the jury's determinations of whether Defendant's pain management practices, including the prescription activities charged in the Superseding Indictment, (both in Counts 1-112 and those undertaken during the conspiracy at Count 113), were beyond the scope of usual professional practice and not conducted for legitimate medical purposes. *See United States v. Pellman*, 668 F.3d 918, 926 (7th Cir. 2012) (noting "overwhelming evidence of Pellmann's unprecedented and undocumented prescriptions of profoundly addicting and potent painkillers, which he personally administered in multiple, private houses and hotel rooms Pellmann shared with Evans for long-term treatment of a condition he was unqualified to diagnose and did not treat in his own area of practice."). To that end, a legitimate medical practice would have policies and procedures for the proper disposal of such waste in approved receptacles and would not permit burying such materials in a residential area. Indeed, receptacles used for syringes and medical waste are prevalent throughout our society and can be seen in many places, including rest stop bathrooms.

The evidence is similarly relevant to the Government's theory of Defendant's profit motive of generating revenue for his pain management practice by avoiding costs attendant to properly disposing of the medical waste, among other things, such as overprescribing, taking cash from patients, and forgoing drug testing, patient exams and other expenses. It also shows that Defendant was trying to hide his practices from investigators and may be used to establish consciousness of guilt. *See United States v. Howard*, 729 F. App'x. 181, 188 (3d Cir. 2018) (approving use of consciousness of guilt instruction when circumstantial evidence supported government position that defendant attempted to destroy evidence); *see also Third Circuit Model*

*Criminal Jury Instructions* at § 4.30.    Once again, the fact that the evidence strongly supports the Government's theories and is damaging to the defense's case does not equate to the type of prejudice required to exclude the evidence under Rule 403.   *See* Fed. R. Evid. 403.

Defendant further moves to exclude all evidence of patient deaths to be introduced at his trial, without specifying the patients at issue.   (Docket No. 90). In response, the Government clarifies that it is only seeking to introduce evidence of the deaths of two patients who are associated with specific charges in the Superseding Indictment and agrees that a limiting instruction should be provided to the jury since Defendant is not charged with causing their deaths. (Docket No. 99).   The Court yet again concurs with the Government's position that the challenged evidence should be admitted along with a limiting instruction to the jury.

It is this Court's opinion that the evidence of the two patient deaths are relevant to the charges, including the conspiracy charged at Count 113.   For example, Defendant is charged at Counts 64-68 with unlawful distribution of oxycodone and/or oxymorphone to "B.R." on three dates, October 22, 2014; November 19, 2014; and December 17, 2014.   The record reveals that "B.R." passed away as a result of an overdose on December 22, 2014.   *See Search and Warrant dated 10/3/2017*, 2:17-mj-01236 at ¶¶ 10-11 (W.D. Pa. Oct. 3, 2017).    Since the distribution of controlled substances to "B.R." and the resulting overdose death took place within the time frame of the charged conspiracy of May 2014 through October 2017, the same is relevant to Defendant's knowledge that his patients were misusing the prescriptions and that his continuing distribution of narcotics was outside the scope of usual professional practice and not for legitimate medical purposes.   *See United States v. Bourlier*, 518 F. App'x 848, 855 (11th Cir. 2013) ("the evidence of death was admitted about patients whose care was the subject of the unlawful prescribing counts.

These patients were receiving controlled substance prescriptions from Robert and died during the time period alleged in these counts of the indictment" along with a limiting instruction as to specific use of such evidence); *see also United States v. Khan*, 778 F. App'x 94, 97-98 (3d Cir. 2019) ("evidence that Khan engaged in the same fraudulent conduct at another clinic relates to his knowledge and absence of mistake when he made false reports at Summer's clinic."). The probative value of such evidence is not substantially outweighed by the prejudice to the defense, and its admission will not cause unnecessary delay as the scope of such evidence will be limited. *See* Fed. R. Evid. 403. Further, any prejudice to Defendant and potential confusion of the jury will be sufficiently mitigated by a careful limiting instruction to the jury informing them that Defendant is not charged with the patients' deaths and the evidence is properly considered for purposes of Defendant's knowledge, intent, and that the distribution of narcotics were outside the scope of professional practice and not for legitimate medical purpose. *See Khan*, 778 F. App'x 94, 98. The parties will be directed to meet and confer and provide a joint limiting instruction for the Court's consideration.

For all of these reasons, Defendant's Motion [90] is denied.

b. *Motion in Limine Relating to Use of Certain Terms (Docket No. 91)*

Defendant next asks the Court to exclude the Government and its witnesses from using certain terms at trial, i.e., "Pill Mill," "Drug Addicts," "Junkie," Drug Dealer in a White Coat," "Drug Dealer in an Office," "Easy Writer," "Substitute One Addiction for Another" and "Quackery." (Docket No. 91). The Government submits that such an order is overbroad and cites caselaw where courts have upheld the use of such terms, when supported by the evidence, and accompanied by a limiting instruction. (Docket No. 94). Having considered the parties'

positions, the Court will deny Defendant's motion, without prejudice, to him lodging specific objections at trial if the need arises and direct the parties to submit joint limiting instructions.

In so holding, the Court notes that Defendant does not differentiate between counsel's use of such terms during opening statements or closing arguments nor use by any of the Government's witnesses.   He also does not point to specific proffered testimony by any Government witnesses utilizing such terms.   As the Government argues, courts have denied similar motions and admitted evidence and argument using these types of terms or phrases in prior cases.   *See e.g., United States v. Gowder*, No. 19-5894, 2020 WL 7863139, at *3 ---- F. App'x ----, (6th Cir. Dec. 30, 2020) ("a doctor issuing excessive prescriptions with little information about each patient permitted the jury to infer that the doctor knew he was part of a pill mill"); *United States v. Guzman*, 571 F. App'x 356, 361 (6th Cir. 2014) ("[Defendant] likewise provides no authority for [his] argument that the phrase 'pill mill' is unduly deprecatory . . . To the contrary, it is a term commonly used by the courts including, our court, to describe illicit pain management clinics."; *United States v. Fuhai Li*, No. 3:16-CR-0194, 2019 WL 1126093, at *9 (M.D. Pa. Mar. 12, 2019) ("According to the Government, this evidence established beyond a reasonable doubt that Dr. Li operated his pain management practice as nothing more than a 'pill mill.'").   Hence, the defense has failed to demonstrate that a blanket pretrial order excluding all such terms is appropriate. With that said, the Court reserves ruling until the time of trial as to the extent of the Government's use of any such terms which will be permitted as needlessly cumulative.   *See* Fed. R. Evid. 403. In addition, the Court will direct the parties to meet and confer and submit a joint limiting instruction to be provided to the jury along with any such argument or evidence.   Accordingly, Defendant's Motion [91] is denied.

11

>    c.   *Motion in Limine for a Cautionary Instruction Concerning References to the Standard of Care (Docket No. 92)*

In his final motion, Defendant seeks a cautionary instruction differentiating between the proof required to convict him at trial in this criminal matter and the standard of care attendant to the medical malpractice action.   (Docket No. 92).   The Government concedes that a cautionary instruction may be appropriate but requests that it be limited in the manner set forth in *United States v. Werther*, 2013 WL 5309451 (E.D. Pa. Sept. 23, 2013). The *Werther* Court charged the jury, as follows:

> In your experiences, some of you may be familiar with or have heard of medical malpractice or the standard of care. This is not a medical malpractice case. Those terms are used in civil cases when a patient is seeking damages. Medical malpractice is the unwarranted departure from generally accepted standards of medical practice allegedly resulting in injury to a patient. This, however, is a criminal case, and you must apply the instructions I am giving to you now and determine whether Dr. Werther distributed or dispensed a controlled substance outside the usual course of professional practice and not for a legitimate medical purpose. You are not deciding whether Dr. Werther should be liable for medical malpractice.

*Id*. at *9.

It is well settled that the use of and language utilized in a particular jury instruction are committed to the discretion of the Court if it is supported by the evidence.   *See e.g., United States v. Barber*, 442 F.2d 517, 527 (3d Cir. 1971) ("We recognize that the trial courts are invested with wide discretionary power in the selection of appropriate language in jury instructions.").   This Court typically gives standard instructions on the presumption of innocence, burden of proof, and reasonable doubt.   *See Third Circuit Model Criminal Jury Instructions* at §§ 1.13, 3.06.   Given the parties' agreement that a jury instruction would be appropriate, the Court will include same as

part of the final instructions to the jury to supplement the standard instructions and will provide them with an opportunity to submit proposed jury instructions.  With that said, the Court generally agrees with the language utilized by the Court in *Werther* quoted above and that additional instructions proffered by the defense should be excluded.

IV.    CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED that Defendant's Motions seeking to exclude evidence [90], [91] are DENIED;

IT IS FURTHER ORDERED that Defendant's Motion requesting a cautionary instruction is GRANTED, IN PART, and DENIED, IN PART.   Said motion is granted to the extent that the Court will provide a jury instruction akin to the instruction used in *United States v. Werther*, 2013 WL 5309451 (E.D. Pa. Sept. 23, 2013), but is denied in all other respects.

IT IS FURTHER ORDERED that the parties shall meet and confer and submit joint jury instructions on the issues identified in this Memorandum Order by **April 9, 2021**.

*s/Nora Barry Fischer*
Nora Barry Fischer, Senior U.S. District Judge

Dated: March 26, 2021

cc/ecf: All counsel of record.

Andrzej Kazimierz Zielke c/o Christopher Capozzi, Esq.